**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **IN RE:** ) | |
| **THOMAS RAY LEPHEW** ) | |
| **EMILY KAY LEPHEW,** ) | **CASE NO. 07-71468** |
| ) | |
| **Debtors.** ) | **CHAPTER 7** |

## MEMORANDUM DECISION

The matter before the Court is the Debtors' Application for Waiver of the Chapter 7 Filing Fee pursuant to 28 U.S.C. § 1930(f). This matter was heard on October 17, 2007 and taken under advisement. After due consideration of the facts and circumstances of this case, the Court, for the reasons noted below, concludes the Application should be denied.

### FINDINGS OF FACT

The Debtors filed a joint chapter 7 petition with accompanying schedules on September 20, 2007. Schedule A reports that the Debtors own no real property and Schedule B reports personal property valued at $11,332.00, including cash in the amount of $5,050.00 and a joint checking account with the value of $50.00. All of the Debtors' personal property was claimed as exempt in Schedule C, or subject to a substantial lien in Schedule D, except the cash, the joint checking account, and a security deposit with their Landlord in the amount of $300.00.

On Schedule, I the Debtors report Mr. Lephew works as a janitor and landscaper and has had that job for eleven months. From this occupation, he has a gross monthly income of $1,137.50, less payroll deductions of $177.67 for taxes and social security, leaving a net monthly

1

income of $959.83. Mrs. Lephew is listed Schedule I as a homemaker and reported no income. In addition to Mr. Lephew's income, the Debtors receive $179.00 per month in food stamps, which combined with Mr. Lephew's income gives the Debtors a monthly income of $1,138.83. For a household of two people, 150% of the poverty guideline for 2007 set forth by the Department of Health and Human Services Poverty Guidelines is $1,711.25 per month. The Debtors' Schedule J reports total monthly expenses of $1,109.00, leaving the Debtors with $29.83 per month in excess income. Of those expenses, $20.00 was allocated toward recreation expenses, $20.00 was allocated to charitable contributions, $40.00 for telephone utilities, and $15.00 for other utilities which was also indicated to be for "phone."

With their petition and schedules the Debtors filed their Application for Waiver of Chapter 7 Filing Fee.[1] The Application and the Affidavit which accompanied it report that Mr. Lephew is the only full time wage earner, that he earned gross income of $15,421.00 in 2006, but was transferred in July of 2007, substantially decreasing his hours from 2006, that Mrs. Lephew is not working because of medical problems but is trying to obtain social security disability, and that Mrs. Lephew has substantial medical expenses due to her health conditions.

At the October 17, 2007 hearing on the Debtors' Application, Mrs. Lephew testified that her husband's hours as a landscaper, which had already been cut from forty hours per week to thirty hours per week, had again been cut to ten hours per week because the mowing season is complete, and that he had actually been laid off on October 16, the day before the

---

[1] Debtors signed and dated the Application for Waiver of Chapter 7 Filing Fee on September 12, 2007, but it was not filed with the Court's Clerk's office until September 20, 2007.

2

hearing.[2] Before Mr. Lephew worked in outdoor landscaping, he had worked in hotel maintenance. With his hours being cut and the expectation that landscaping hours of employment will be few during the winter months, Mr. Lephew had looked for other means of employment, but has not been successful, according to Mrs. Lephew, because there were not a lot of opportunities in Wythe County. She stated that despite looking for employment as far away as Charlottesville, Mr. Lephew had not been successful because he has a felony conviction.

Mrs. Lephew further testified that she was not working because she recently survived cervical cancer and was trying to get on disability. Although Mrs. Lephew did not have surgery to fight the cancer, she did take medication and has to travel to the University of Virginia Medical Center in Charlottesville to take advantage of their reduced rates for medical care two to four times per month. In answering questions from this Court, Mrs. Lephew stated that she had applied for social security benefits eight or nine months before the hearing, but was not sure of the actual date. Despite being assisted by an organization that helps people obtain security benefits, her application was turned down because she has an extensive history of customer service experience. Mrs. Lephew testified that she couldn't work and her regular doctor at the University of Virginia Medical Center actually filled out a form advising that she should not seek employment because of her health. The denial of her social security benefits is being appealed without an attorney, and she testified that her multiple health problems are the reason that she thinks she can win an appeal, but as of the time of the hearing in this case there was no

---

[2] Mrs. Lephew stated early in her testimony that Mr. Lephew's hours were cut to ten hours the day before the hearing when being examined by Debtors' counsel, but later under examination by the Court stated that her husband was laid off the day before the hearing.

scheduled date for her social security appeal.

Regarding tax refunds, Mrs. Lephew stated that last year, she and her husband received $3,700.00 in earned income tax credits from the government. However, they expect that number to be much lower because they no longer have a daughter in college. As a result, Mrs. Lephew testified that she expects to receive a tax refund of around $1,000.00 in March or April of 2008.

As reported in their Schedules, the Debtors had cash on hand in the amount of $5,050.00 and Mrs. Lephew testified that about $4,000.00 of that amount was a repayment of a loan to their daughter.[3] However, on the day of the hearing, Mrs. Lephew testified that the money was no longer available because it had gone to pay bills. She brought with her to the hearing a list of payments and purchases for which the cash was used and this included $1,000.00 for van payments, which she indicated included three delinquent monthly payments of $200.00 each at the time of filing and two payments in advance; $300.00 to Tractor Supply to which the Debtors pay a $69.00 monthly payment on a lawnmower; a $600.00 payment for car insurance, which Mrs. Lephew testified will not have to be paid for a while because of this payment;[4] $400.00 for past due and current utilities; $200.00 for medical expenses; $300.00 for gas for trips to the University of Virginia Medical Center; $500.00 for van repairs, including new brakes that the Debtors knew needed changing and transmission work because it had been

---

[3] The Debtors' counsel stated that the loan was repaid the day after the petition and schedules were filed with this Court, but she included the cash in the schedules because the Debtors knew that money was coming in the following day.

[4] Debtors' Schedule J reports $100.00 per month that is allocated toward auto insurance. Therefore, a $600.00 payment for auto insurance would cover the Debtors for the next six months.

"jerking"; $200.00 for personal property tax on the van as a non-dischargeable debt; $300.00 for food; $200.00 for gifts to children for their birthdays; $500.00 for a recliner in the living room; $300.00 for miscellaneous expenses and winter clothes; and $200.00 left in the bank on which to live. The aggregate total of all these amounts is $5,000.00. Regarding the $500.00 recliner, Mrs. Lephew stated that she and her husband purchased the recliner about ten days before the hearing and the reason for purchasing the recliner was that they used to sit on kitchen chairs, which were uncomfortable. In response to Mrs. Lephew's testimony regarding the recliner, the Court noted that the Debtors had been married for two years without a recliner, so it looked like they chose to buy the recliner instead of paying their filing fee. Furthermore, the Court inquired of Mrs. Lephew whether its impression that the Debtors had so managed their affairs as to make them unable to pay the filing fee by the time of the hearing was a fair one or not, to which Mrs. Lephew stated that if they had wanted to spend all the cash so they would not be able to pay the filing fee, they would have spent it in a matter of days and not over the span of months paying off bills.[5]

At the conclusion of the hearing, the Court took the matter under advisement and stated that the situation presented of debtors having the ability to pay the case filing fee at the commencement of the case, but without the ability to pay by the time their Application for Waiver of the Filing Fee was heard, is not the kind of the circumstance that Congress envisioned when it authorized bankruptcy courts to waive filing fees. The Court asked Debtors' counsel to submit to the Court within ten days a letter including authorities in support of the Debtors'

---

[5] Mrs. Lephew testified that she and her husband spent the cash over a period of "months" even though it had been less than one month from the time of filing until the hearing.

Application under the circumstances presented in this case.

  Debtors' counsel has done that by a letter dated October 24, 2007 on the issue of a debtor who has the means to pay the filing fee at the time of filing bankruptcy but subsequently is unable to pay the fee. In the letter, counsel stated that a court is able to waive a filing fee in a chapter 7 case if the debtor's income is below 150% of the poverty guidelines. In this case, the Debtors' monthly income is $1,128.83 and that falls well below the poverty guidelines for a family of two, which is $1,711.25. Even if the $5,000.00[6] loan repayment from their daughter was included in their income, it would increase their monthly income by $416.67, making their monthly income $1,545.50, which still falls well below 150% of the poverty guidelines. Furthermore, because the only wage earner in the household has had his work hours drastically reduced, the Debtors fall even further below 150% of the poverty guidelines and, therefore, qualify for a waiver under 28 U.S.C. § 1930(f).

  In support of her position, Debtors' counsel cites *In re Wilton*, 2005 Bankr. LEXIS 2755 (Bankr. E.D. Va. June 16, 2005), which counsel contends supports the proposition that courts should examine a debtor's luxury items and unreasonable expenses as indicated in the debtor's schedules which may be sacrificed to pay the filing fee. Debtors' counsel explained that the court in *In re Wilton* considered luxury items to be items such as big screen televisions, vacation properties, vacation vehicles, and financial investments, and based on these kinds of things, the *Wilton* court would not consider a recliner to be a luxury item, considering that the Debtors did not have any furniture on which to sit in the living room. The unreasonable

---

[6] Debtors' counsel stated in her letter to the Court that the Debtors received $5,000.00 around the time of filing their chapter 7 Petition, but Mrs. Lephew testified that only $4,000.00 of that amount was the daughter's repayment of a loan.

expenses, Debtors' counsel contends, described in *In re Wilton* include cable television, recreational expenses, and charitable contributions, but the Debtors in the present case do not have cable or satellite television or any miscellaneous recreational expenses.[7]  Instead, the Debtors spend their monthly income on necessities, including utilities, food, clothing, transportation, and payments on their vehicle.  For these reasons, Debtors' counsel asks that the Application for Waiver of the Chapter 7 Filing Fee filed by the Debtors be granted.

On the basis of the evidence presented to the Court, it finds that the Debtors, at the time they filed their petition on September 20, 2007, had income less than 150% of the official Federal guideline poverty level income, but nevertheless then had the financial means to pay the filing fee.  It further finds that at the time of the October 17th hearing upon their Application to waive the case filing fee, they no longer had the ability to pay such filing fee either in a lump sum or in installments over the period of time allowed to do so, based on their reasonably assured income and likely living expenses, without experiencing significant hardship.

### CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  A request to waive a filing fee is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2) in that a request made to a bankruptcy court to waive a filing fee due under the statute to the Clerk of that court is inherently a matter involved with the administration of the case, if not the administration of the estate.  Furthermore, Congress has expressly

---

[7] In fact, Debtors' Schedule J lists Charitable Contributions of $20 per month and Recreation expenses of $20 per month.

7

authorized bankruptcy courts in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to waive the ordinary chapter 7 case filing fee in certain cases where a debtor has neither the income nor the assets to pay the filing fee even in installments. 28 U.S.C. § 1930(f) permits the bankruptcy court to waive the filing fee in an individual debtor's chapter 7 case filed after October 17, 2005. *See* H.R. Rep. No. 31, 109th Cong., 1st Sess. 418 (2005).

>That authorizing statute provides as follows:
>
>Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments.

28 U.S.C. § 1930(f)(1). On August 11, 2005, the Judicial Conference of the United States promulgated interim procedures to assist courts in implementing the fee waiver provision. *See Judicial Conference of the United States Interim Procedures Regarding the Chapter 7 Fee Waiver Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, available at* http://www.uscourts.gov/bankruptcycourts/jcusguidelines.html (promulgated Aug. 11, 2005).

Both the statute and the interim procedures provide for a two prong test to determine applications for filing fee waivers: a maximum income test and an inability to pay in installments inquiry. In the case of the Lephews, the maximum income test is clearly satisfied because their income, both at the time of their filing and even more so at the time of the hearing upon their Application, was less than 150% of the official poverty level income. This test is by

far the easier to apply because, other than the inherent difficulties which arise when attempting to determine precisely how income ought to be defined, it involves objective figures rather than requiring a judgment which in some sense has both objective and subjective components to it.

The Court will turn to the more difficult of the two tests: inability to pay in installments. The Interim Procedures offer some guidance of a very general nature in applying this test. They provide that the court "should consider the totality of the circumstances in determining whether the debtor is unable to pay the fee in installments." *Interim Procedures, supra,* at II.A.5. Moreover, "the debtor has the burden of showing that the application should be granted." *Interim Procedures, supra,* at II.A.6. Both of these guidelines, "totality of the circumstances" and the applicant's "burden of proof" to demonstrate inability to pay, have been adopted by the bankruptcy courts, including this one, which have issued published decisions. *See In re Phillips*, 375 B.R. 201, 205 (Bankr. W.D. Va. 2007) (holding that the second prong is determined by the totality of the circumstances and the debtor bears the burden of proof); *In re Davis*, 372 B.R. 282, 285 (Bankr. W.D. Va. 2007 (holding that the Interim Procedures give the debtor the burden to show the application should be granted and in making the determination the court should look at the totality of the circumstances); *In re Stickney*, 370 B.R. 31, 39-40 (Bankr. D.N.H. 2007) (holding that the debtor bears the burden of proof and the court determines the failure to pay by the totality of the circumstances test); *In re Kauffman*, 354 B.R. 682, 685 (Bankr. D. Vt. 2006) (holding that the second prong must be determined by the totality of the circumstances); *In re Burr*, 344 B.R. 234, 236 (Bankr. W.D.N.Y. 2006) (holding that bankruptcy courts have the authority to waive chapter 7 filing fees if the totality of the circumstances "compel[] this treatment" and the debtors carry the burden to prove the circumstances do); *In re*

*Bradshaw*, 349 B.R. 511, 516 (Bankr. E.D. Tenn. 2006) (holding that the court will only grant a filing fee waiver where a debtor has carried the burden of establishing she cannot pay the filing fee based on the totality of the circumstances); *In re Lineberry,* 344 B.R. 487, 493 (Bankr. W.D. Va. 2006) (holding that the totality of the circumstances is the standard used to determine the second prong analysis and the debtor bears the burden of proof); *In re Nuttall*, 334 B.R. 921, 923 (Bankr. W.D. Mo. 2005) (finding that the court must determine that the debtor cannot pay the filing fee in installments based on the totality of the circumstances and the debtor has the burden of proving the application should be granted).

This case presents a very intriguing issue. This Court has found that the Debtors, as of the time they filed their petition, had the financial means to pay the requisite chapter 7 case filing fee, but they no longer had such means by the time of the hearing upon their Application, twenty-seven days later. So far as this Court's research has been able to determine, such a factual situation is unique in the published decisions applying 28 U.S.C. § 1930(f)(1). Neither do the Interim Procedures address the issue as to when the debtor's ability to pay ought to be determined. The *Kauffman* decision rescinded a prior order granting a fee waiver based in part on the fact that the debtor was entitled as of the petition date to a state property tax refund of $1,415. *Kauffman*, 354 B.R. at 684-85. The decision contains no suggestion, however, that the debtor no longer had such ability at the time of the hearing, which seems unlikely in view of his ownership of unencumbered real estate worth more than $135,000.00. Similarly, Chief Judge Krumm of this Court just recently held that a debtor of very little financial means, but who was able to place in escrow the amount of the filing fee pending the Court's decision upon her fee waiver application, demonstrated that she did have the ability to pay such fee. *See In re Davis*,

372 B.R. 282 (Bankr. W.D. Va. 2007).

As support for the Debtors' position, Debtors' counsel cites to *In re Wilton*, a pre-BAPCPA case. In *Wilton*, the debtor sought to waive the $39.00 administrative fee and the $15.00 trustee surcharge under 28 U.S.C. § 1930(b) and 11 U.S.C. § 330(b)(2), respectively. *Id*. at *2. The court noted that 28 U.S.C. § 1930(a)(1) at that time specifically provided that the $155.00 filing fee may not be waived, but recently courts had held that the administrative fee and the trustee surcharge might be waived. *Id*. at *3. In the past, the court had determined on a case-by-case basis that the administrative fee might be waived "only in the most exceptional cases involving wholly destitute debtors." *Id.* at *4. Accordingly, in making such determination the court had assessed whether the debtors intended to retain possession of luxury items under rental contracts, had equity in vacation homes or automobiles, had liquid investment or retirement accounts balances, or had income exceeding their expenses or had unreasonable expenses in their budgets. *Id.* The court, however, held that it was not inclined to waive the $155 filing fee, the $39 administrative fee, or the $15 trustee surcharge fee under any circumstance prior to the effective date of BAPCPA and did not expect to do so in the absence of "unusual circumstances." *Id.* at *6. It then noted that it did not find such "unusual circumstances" presented where the debtor reported $30 per month for cable television, $60 per month for recreation and $20 per month for charitable contributions, all of which the court deemed non-necessities. *Id.*

This holding, however, is not helpful to the Debtors in the present case. *In re Wilton* did not determine the debtor's application for waiver of the administrative fee and trustee surcharge fee pursuant to 28 U.S.C. § 1930(f), which governs the Debtors' Application in this

case. Additionally, and probably most important to the present case, the debtor in *Wilton* did not appear to have cash on hand at the time of filing, which was subsequently spent and unavailable at the time of the hearing upon the application to waive the requested fees. Therefore, due to the foregoing, the case of *In re Wilton* is not determinative of the present case. If anything, its rationale, in this Court's judgment, supports denial of rather than granting the Lephews' Application.

        Inherently, the determination of whether a bankruptcy debtor has the ability to pay the normal filing fee in installments requires an evaluation of the debtor's ability over time, that is to say, over a period in the future not exceeding 180 days from the filing date,[8] to pay such fee. If that be the sole basis upon which the Court ought to make its determination, the Lephews' Application ought to be granted because it is clear that their financial circumstances over at least the next several months look pretty grim. Nevertheless, the Court is constrained to conclude that if bankruptcy debtors have at the time they file their petitions the means to pay the filing fee, they may not avoid the responsibility for doing so by the expedient of paying insurance premiums and vehicle payments in advance and/or buying consumer goods which, even though not luxurious in nature, are not demonstrably necessary for their ordinary support and maintenance. To rule otherwise would offer an incentive to bankruptcy debtors to spend their available funds on goods and services which were of most value to them rather than worrying about the requirement of paying the filing fee. It would be a strange set of affairs for the Court to penalize the debtor in *In re Davis*, who placed the filing fee in escrow pending the court's hearing of her application, and then reward debtors such as the Lephews who spend their

---

[8] Fed. R. Bankr. Pro. 1006(b)(2).

cash resources even before a hearing can be held on their application. Despite some apparent common belief among the public at large that many bankruptcy debtors seek relief which is not truly needed, it is the Court's perception that most of them are experiencing actual financial distress and certainly would opt, if the opportunity were provided to them, to obtain bankruptcy relief without paying a filing fee and thereby preserve such money for the benefit of their families. It is clear, however, that Congress did not intend for the courts to waive filing fees for all those who simply preferred not to pay them or even for those who could not easily pay them, but rather to limit such benefit to those who both have very modest income and truly are without other means to pay the requisite filing fee. While the Court makes no finding that the Lephews have proceeded in bad faith, the evidence as to such being subject to differing interpretations and no necessity for any such finding appearing, it does conclude that to waive the filing fee for debtors who had, at the time of filing their Application, the clear ability to pay their filing fee, but elected to use such funds for purposes beyond the immediate necessary support of themselves and their dependents, would constitute an abuse of the bankruptcy system which this Court should not condone. To do so would thereby encourage others to proceed in a similar manner. Certainly Congress has made clear that bankruptcy courts should not retreat from taking such action as may be reasonably necessary to prevent "an abuse of process." 11 U.S.C. § 105(a).

## CONCLUSION

For the reasons discussed above, the Court concludes that the Debtors' Application for Waiver of the Chapter 7 Filing Fee ought to be denied. Unfortunately, that decision may result in the denial of bankruptcy relief to debtors who no longer have the financial

ability to pay the filing fee. While the Court regrets such circumstance, it believes that the responsibility for such misfortune rests upon the Lephews' own doorstep. In light of Mrs. Lephew's testimony that some tax refund, albeit in a seriously reduced amount of perhaps $1,000.00, is expected for their 2007 tax year, the Court by separate order will provide that their Application will be denied but they will be granted leave to pay such filing fee in one payment no later than March 18, 2008, which is the maximum length of time authorized for the payment of a filing fee not paid at the time of filing.[9] If they are unable to do so, their case will be dismissed. An order to such effect will be entered contemporaneously with this decision.

ENTER this 9th day of November, 2007.

*William F. Stone, Jr.*

_____
UNITED STATES BANKRUPTCY JUDGE

---

[9] The maximum length of time which the Court may grant is 180 days after the filing date. Fed. R. Bankr. Pro. 1006(b)(2).